UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| THOMAS L. JENKINS and | ) | CASE NO.  13-40793 |
| KAREN M. JENKINS | ) | Chapter 12 |
| Debtors | ) | |
| _____ | ) | |

## MEMORANDUM

The above-styled Chapter 12 case came before the Court on January 14, 2014, for hearing on confirmation of the First Amended Chapter 12 Plan of Reorganization ("Amended Plan") of the Debtors, and on the Motion to Dismiss filed by Planters Bank, Inc. ("PBI") and by the U.S. Department of Agriculture, Farm Service Agency (the "FSA"). The Debtors and representatives of PBI appeared in person and by counsel at the trial, as well as counsel for the FSA. Counsel for Crop Production Services, Inc. ("CPS") and the Chapter 12 Trustee, Harry Mathison, also appeared at the trial. The Court, having heard the testimony and evidence presented at trial, and having considered the authorities submitted by the parties, concluded this Chapter 12 case should be dismissed. In light of the ruling on the Motion to Dismiss, the Court did not address the issue of confirmation of the Amended Plan. The Court enters the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bank. P. 7052.

## I. FINDINGS OF FACT

The Debtors filed a voluntary petition for relief under Chapter 12 of the United States Bankruptcy Code on July 18, 2013. With their petition, the Debtors also filed sworn Bankruptcy Schedules ("Schedules") and a sworn Statement of Financial Affairs (the "SoFA"). On July 19, 2013, the Court entered its standard Chapter 12 Operating Order ("Operating Order") which required

the Debtors to take several actions, including filing a Summary of Operations ("Summary"), opening a debtor-in-possession ("DIP") bank account, and filing monthly operating reports.

On July 18, 2013, the Debtors filed an application to employ Steven D. Wilson of Wilkey & Wilson, P.S.C. to represent them in this Chapter 12 bankruptcy case. PBI filed a response to the application alleging that the Debtors had paid Mr. Wilson a $10,000 retainer out of a tobacco proceeds check dated January 29, 2013 in the amount of $56,804.12 from Burley Stabilization Corporation. PBI asserted that the tobacco proceeds funds constituted cash collateral subject to PBI's lien, including any proceeds paid to Mr. Wilson. PBI did not object to employment of Mr. Wilson, but reserved its right to object to the payment to Debtors' counsel to the extent the retainer was subject to PBI's lien. The Court held a hearing on the application to employ on September 11, 2013, and on September 12, 2013, the Court entered an order approving the employment of Mr. Wilson.

The Debtors filed their First Chapter 12 Plan of Reorganization ("First Plan") and their Summary on September 3, 2013, and the first meeting of creditors was held on September 4, 2013. The first confirmation hearing was scheduled on October 16, 2013. Both PBI and CPS filed objections to confirmation of the First Plan. The confirmation hearing was rescheduled twice at Debtors' request to obtain a real estate appraisal.

PBI and the FSA took a 2004 examination of the Debtors on December 10, 2013, and filed the Motion to Dismiss on December 12, 2013. In the Motion to Dismiss, PBI and the FSA alleged that the Chapter 12 case should be dismissed due to the Debtors' failure to comply with the Operating Order in several respects. They noted that the Summary, which was required to be submitted shortly after the filing of the petition in July, was not submitted until September 3, 2013,

2

the day immediately prior to the 341 meeting of creditors. PBI and the FSA also alleged that the Debtors had failed to comply with the Operating Order with respect to the monthly operating reports. Those reports were due on the 15th of each month, and as of the filing of the Motion to Dismiss, no operating reports had been filed. PBI and the FSA also alleged that the Debtors had failed to comply with the provision of the Operating Order requiring them to open new a DIP bank account. While the Debtors attempted to comply with the Operating Order in this respect in August 2013, upon their initial inability to open the account, no further efforts were made to comply. PBI and the FSA alleged that these actions by the Debtors constitute an unreasonable delay that is prejudicial to creditors; a continuing diminution of the bankruptcy estate and the absence of a reasonable likelihood of reorganization; and, cause generally for dismissal. PBI and the FSA sought dismissal with prejudice thereby prohibiting the Debtors from filing another bankruptcy petition for an unspecified amount of time. The Debtors never filed a written response to the Motion to Dismiss.

As stated above, the Court conducted an evidentiary hearing on the Motion to Dismiss and confirmation on January 14, 2014, at which time both Debtors appeared and were examined under oath.

At the evidentiary hearing, evidence was presented that the Schedules, SoFA, Summary, and monthly operating reports all contained inaccuracies, inconsistencies, and omissions. For instance, the Debtors Schedule B of assets failed to include a $11,980.17 certificate of deposit, failed to include a Hilliard Lyons account, failed to include Mrs. Jenkins' Kentucky state retirement account, failed to include an interest in Hopkinsville Elevator, failed to include a $6,219 credit owed to the Debtors by Hopkinsville Elevator. Debtors' Schedule G of leases and executory contracts failed to include numerous leases and crop sharing agreements between the Debtors and several other

3

individuals. The Debtors testified these agreements were not included because they did not believe them relevant as they did not involve money, but rather were simply leases for cutting hay or maintaining pastures.

The SoFA failed to include a $6,700 payment to John Deere made shortly prior to the filing of the case. It also failed to list a $5,000 payment the Debtors made to repay their children. Finally, the SoFa failed to include two large payments to Southern States ($14,609.08 and $7,744).

The Debtors argued that these omissions were not intentional and that their transactions were not intentionally concealed. They further argued that the omissions and inaccuracies did not keep the parties from adequately understanding their financial situation in light of the reports prepared by the Pennyroyal Ag Analysis ("PAA"). The PAA would receive the Debtors' bank statements and prepare reports based upon those statements breaking down the Debtors' deposits and expenses. However, upon examination, the Debtors admitted that the PAA reports failed to include the financial activity from a bank account held at Old National Bank.

With respect to the operating reports, as stated above the operating reports were due on the 15th of each month. The Debtors did not file any operating reports until January 8, 2014, almost six months after the filing of the case, and just six days prior to confirmation. Moreover, while the July operating report is dated August 14, 2013, the Debtors could offer no explanation as to why it was not filed until January, 2014. Furthermore, while that July report reflected cash receipts of $14,378.26 and expenses of $5,865.51, the report indicates that the profit for the month was only $61.65. The Debtors provided no explanation of why the profit was reported so low in light of the $8,500 difference between the income and expenses.

With respect to the DIP bank account, the Debtors testified that had difficulty opening the

DIP account at the inception of the case. They were able to eventually open a DIP account at some point in December, 2013, after the 2004 examination by PBI and FSA. Asked to explain why they waited from August 2013 to December 2013 to retry to open the DIP account, the Debtors could provide no explanation.

The Debtors also admitted that they received over $56,804 payment from Burly Stabilization Corporation for their tobacco crop. They also admitted that these proceeds were subject to the lien of PBI and that they used the funds for their own purposes, without remitting the proceeds to PBI. The Debtors testified that the funds were used for a variety of purposes, including for farm use and for payments to their attorney.

The Debtors also admitted to using over $7,700 of the proceeds to spray a wheat crop which went to the benefit of the Mr. Jenkins' brother. While the exact nature of the business relationship between the Debtors and Mr. Jenkins' brother is unclear, what was clear is that the Debtors received no return for the $7,700 payment they made in spraying Mr. Jenkins' brother's wheat crop.

Finally, when asked by PBI about the number and status of the cattle reported on the Summary, the Debtors could not account for the cattle. Mr. Jenkins almost took pride in the fact that he was unaware of the number of animals. While the August operating report reflected the loss of two cows, the Debtors had no current count of the number of cows in their possession.

Upon examination by the Trustee, the Debtors admitted that in their SoFA reflected that up to July 2013 they had over $100,000 in farm income. In their July through November monthly operating reports, however, the Debtors reported no farm income. No explanation could be provided why the beginning of the year reflected over $100,000 in income while the end of the year reflected no income. Moreover, when asked where the $100,000 in farm income went, in light of the

Schedules showing only *de minimis* cash accounts, the Debtors could provide no explanation. While the Trustee filed no written pleading on the matters before the Court, from the tenor of his questions and his closing statement, it appeared to the Court that the Trustee, in addition to opposing confirmation of the Debtors' Amended Plan, supported dismissal of the Debtors' Chapter 12 case.

## **CONCLUSIONS OF LAW**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L), and venue is proper under 28 U.S.C. § 1409(a). The parties have submitted to the jurisdiction of this Court.

## **LEGAL DISCUSSION**

PBI and the FSA seek to dismiss this bankruptcy case "for cause," pursuant to Section 1208(c) of the Bankruptcy Code. They allege multiple grounds as cause for dismissal of this case, including, gross mismanagement by the Debtors which is prejudicial to creditors, continuing loss to or diminution of the estate, the absence of a reasonable likelihood of rehabilitation. Section 1208(c) provides:

> On request of a party in interest, and after notice and a hearing, the court may dismiss a case under this chapter for cause, including--
> (1) unreasonable delay, or gross mismanagement, by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees and charges required under chapter 123 of title 28;
> (3) failure to file a plan timely under section 1221 of this title;
> (4) failure to commence making timely payments required by a confirmed plan;
> (5) denial of confirmation of a plan under section 1225 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;
> (6) material default by the debtor with respect to a term of a confirmed plan;
> (7) revocation of the order of confirmation under section 1230 of this title, and denial of confirmation of a modified plan under section

6

>1229 of this title;
>(8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan;
>(9) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; and
>(10) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

PBI and the FSA bore the burden of proof to establish that cause exists to dismiss this case. See In re French, 139 B.R. 476, 479 (Bank.D.S.D.1992).

In this case, the Court found more than sufficient cause warranting dismissal of this case. The Debtors inaccuracies, omissions, and inconsistencies on their Schedules, SoFA, and monthly operating reports alone warrant dismissal. The Debtors argued that their failure to disclose the assets and leases was not intentional and that their financial records were made available to all the parties. With respect to the leases, the Debtors argued their failure was due to the fact that they believed the leases immaterial as they did not involve money. These arguments misperceive the whole purpose for schedules and disclosure of assets. Full, complete, and candid disclosure is essential to the operation of the bankruptcy system. In re Woodson, 839 F.2d 610, 614 (9th Cir.1988); Payne v. Wood, 775 F.2d 202, 205 (7th Cir.1985), *cert. denied*, 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986).

A debtor's job is to disclose all assets. In re Chalik, 748 F.2d 616, 618 (11th Cir.1984); In re Sholdra, 249 F.3d 380, 383 (5th Cir.2001) (full disclosure of assets and liabilities in the schedules required to be filed by one seeking relief is essential). This Court understands the difficulty in one hundred percent accuracy in a debtor's schedules. Indeed, total accuracy is almost impossible in many cases. Having said that, this is not a case where the Debtors' schedules were "off" a little. This is not a case where the assets and items not listed were immaterial. Instead, these Debtors

7

failed to list numerous and <u>material</u> items in their schedules and SoFA. The Debtors' failure to list these assets is a material breach of their important duty to the creditors, this Court and the bankruptcy system in general.

Disclosure serves several purposes. Disclosure puts all parties on notice to what is available to the Debtors, but also puts other parties on notice to what might be available to creditors. Preferential transfers, fraudulent transfers, as well as undisclosed assets are all more easily discovered when debtors accurately complete their schedules and the statement of financial affairs.

The Debtors argued that the PAA reports corrected or mitigated the effect of the omissions and errors. This position is incorrect for two reasons. First, the Debtors admitted the PAA reports were flawed in that they did not account for all their bank accounts. Maybe the PAA accounts could have been useful, but in light of the information not included, they serve no purpose in adequately shedding light on the Debtors' true financial situation. The second problem with the Debtors' argument regarding the PAA reports is that the duty to accurately fill out schedules and the statement of financial affairs rests with debtors. Section 521 of the Bankruptcy Code places certain duties upon debtors, and those duties include accurately filling out schedules and the statements of financial affairs. This duty cannot be delegated to creditors to find out for themselves. The creditors, the Chapter 12 Trustee, and the Court should not have to examine multiple sources of information to determine if the Debtors were honest and complete on their sworn Schedules and SoFA. <u>In re Buescher</u>, 491 B.R. 419 (Bankr. E.D. Tex. 2013) ("Full disclosure of assets and liabilities in the schedules required to be filed by one seeking relief under Chapter 7 is essential because the schedules serve the important purpose of insuring that adequate information is available for the Trustee and creditors without need for investigation to determine whether the information

8

provided is true.") quoting Cadle Co. v. Pratt (In re Pratt), 411 F.3d 561, 566 (5th Cir. 2005).

Finally, the Debtors' failure to disclose the existence of several assets and transfers began a chain of falling dominoes of false impressions. The Court has absolutely no confidence in any of the information provided in the monthly operating reports. They clearly conflict with the information contained in the SoFA regarding pre-July farm income. Additionally, as pointed out during the Chapter 12 Trustee's examination of Mrs. Jenkins, the monthly operating reports simply do not make mathematical sense.

In addition to the failures with regard to the Schedules, SoFa, and operating reports, cause also exists to dismiss this case due to the Debtors' failure to comply with the Operating Order. The monthly reports were not timely filed, and were only filed after dismissal motion was filed. Moreover, while the reports are dated from earlier in 2013, the reports were not provided until January 2014, less than a week prior to confirmation. The Debtors could provide no explanation as to why there was such a delay in filing the reports. In fact, in light of the other failings, the Court has serious questions as to when these reports were actually prepared and signed.

The Debtors failure to comply with the DIP bank account until some five months after the filing of the case is also very troubling to the Court. The Court understands there may be problems with opening DIP bank accounts immediately upon the filing of a Chapter 12 case. Nevertheless, the Court ordered the Debtors to open the DIP accounts in July 2013, and, after their failure to open the DIP account in August 2013, the Debtors made no further effort for over three months to try and open a DIP account. Perhaps if the Debtors had timely opened the DIP account, some of the questions regarding their financial circumstances could have been avoided.

The Court also finds cause for dismissal due to a diminution to the estate. Specifically, the

Debtors conversion of the tobacco proceeds constitutes cause for dismissal. The Debtors were aware the crop proceeds were subject to a crop lien, yet they decided to use the funds without regard to their creditors' security interest in those proceeds. Moreover, the Debtors' use of the funds to pay for spraying a wheat crop belonging to Mr. Jenkins' brother is particularly disturbing. The Court is unsure why the Debtors would pay for the spraying of a wheat crop to which they retained no interest, but in any event, it was not the Debtors' money to spend as they saw fit.

## CONCLUSION

As the Court found at the conclusion of the hearing, the Bankruptcy Code requires full and complete disclosure by Debtors. Transparency is a must in the bankruptcy context. These Debtors failed to provide full and complete disclosure. This is not a case of a few minor discrepancies or omissions, but rather a case with a litany of material discrepancies and omissions.

The violations of the Operating Order also constitute cause for dismissal. The delay in filing the monthly operating reports was unexplained and prejudicial to creditors being filed right before confirmation. The Court is unsure how the Debtors expected their creditors to adequately prepare for confirmation when they delayed in providing critical information regarding their farming operations until less than a week prior to confirmation.

It has been said many times that bankruptcy is a privilege, not a right. Matter of Juzwiak, 89 F.3d 424 (7th Cir. 1996); Astro Building Supplies, Inc. v. Slavik, 433 B.R. 651, 667 (E.D. Mich. 2010) (internal quotations and citations omitted). In order to have entitlement to that privilege, certain basic responsibilities are placed upon debtors. The Debtors in this case failed to meet those responsibilities in several respects. Accordingly, cause exists under 11 U.S.C. § 1208(c) for dismissal. The Court shall enter a Judgment this same date in accordance with the holding of this

Memorandum.

/s/ Alan C. Stout
_____
Alan C. Stout
United States Bankruptcy Judge

Dated: January 23, 2014

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN RE: ) | |
| ) | |
| THOMAS L. JENKINS and ) | CASE NO. 13-40793 |
| KAREN M. JENKINS ) | Chapter 12 |
| Debtors ) | |
| _____ ) | |

## ORDER

Pursuant to the Court's Memorandum entered this date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the Motion to Dismiss is granted and that the within case be, and the same is hereby, dismissed, with prejudice, and that Debtors are prohibited from filing another petition under Chapter 12 for a period of six months.

**IT IS FURTHER ORDERED** that the Court shall retain limited jurisdiction to adjudicate issues regarding compensation paid to Debtors' counsel.

**IT IS FURTHER ORDERED** that this case shall remain open for a period of twenty (20) days in order for any party to file an appropriate pleading seeking recovery of the compensation paid to Debtors' counsel. Should nothing be filed, the case shall be promptly closed. Should a party file an appropriate pleading, the case will be closed upon the resolution of that pleading.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: January 23, 2014